IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALUCHEM, INC., | § | |
| | § | |
|     Plaintiff, | § | Civil Action |
| | § | No. C-06-183 |
| v. | § | No. C-06-210 |
| | § | |
| SHERWIN ALUMINA, L.P., HOUSHANG | § | |
| SHAMS, MARK LIU, JERRY HOOPER, | § | |
| | § | |
|     Defendants. | § | |

## ORDER ADDRESSING SHERWIN ALUMINA, L.P.'S
## MOTION FOR SUMMARY JUDGMENT

On this day came on to be considered Defendant Sherwin Alumina, L.P.'s ("Sherwin Alumina") motion for summary judgment (D.E. 86) in the above-styled consolidated action.[1]  The Court hereby GRANTS Sherwin Alumina's motion for summary judgment as to AluChem, Inc.'s ("AluChem") claim for violation of the Texas Deceptive Trade Practices Act ("DTPA"), and the Court hereby DENIES Sherwin Alumina's motion for summary judgment as to AluChem's claims against Sherwin Alumina for fraud and breach of the covenant of good faith.  The Court also DENIES Sherwin Alumina's request for declaratory relief regarding contractual limitation of liability.[2]

---

[1]On March 26, 2007, AluChem was re-designated as Plaintiff in this matter, and Sherwin Alumina was re-designated as the Defendant.  (D.E. 116).

[2]The other issue raised in Sherwin Alumina's motion for summary judgment has already been addressed by the Court in its Order entered March 19, 2007 (D.E. 107).  Specifically, Sherwin Alumina devotes much of its motion for summary judgment to various arguments regarding the termination date of the Supply Agreement between Sherwin Alumina and AluChem (Motion, pp. 9-14). The Court has already declared that the Supply Agreement

## I. __Jurisdiction__

The Court has diversity jurisdiction over this consolidated action pursuant to 28 U.S.C. § 1332(a).

## II. __Factual Background__

The Court sets forth the extensive factual background of this case in the Court's Order No. 107, Order Granting AluChem, Inc.'s First Motion for Summary Judgment (<u>Sherwin Alumina L.P. v. AluChem, Inc.,</u> 2007 WL 862151 (S.D. Tex. 2007)).  The Court directs the parties to the above-referenced Order for a detailed recitation of the facts in this action.  A brief factual summary is provided below.

In 2001, AluChem approached Sherwin Alumina regarding the possibility of Sherwin Alumina supplying AluChem with certain calcined, chemical grade alumina products.  Sherwin Alumina completed a number of trial runs producing the calcined alumina products using "kiln 8" at its Texas plant.  After Sherwin Alumina completed at least six trial runs, in 2002 Sherwin Alumina and AluChem entered into a Supply Agreement, whereby Sherwin Alumina agreed to provide AluChem with designated calcined alumina products for a certain price paid by AluChem (hereinafter, the "Supply

---

terminates on December 31, 2007, so this issue raised by Sherwin Alumina is MOOT.  The Court also notes that in its motion for summary judgment, Sherwin Alumina raises the conspiracy to defraud claim brought by AluChem against the Individual Defendants in this case, Houshang Shams, Mark Liu and Jerry Hooper (Motion, p. 17).  That claim has since been DISMISSED without prejudice by agreement of the parties (D.E. 128).

Agreement"). The Supply Agreement is "evergreen," meaning that the Agreement continues in effect for subsequent two-year terms unless either party terminates the Agreement in writing twelve months prior to the end of the current contract term. Per the terms of the Supply Agreement, if one party were to give written notice of termination of the Agreement, the Agreement would continue in force until the end of that calendar year and for the entire calendar year thereafter, at which point it would terminate.

Sherwin Alumina first produced calcined alumina products for AluChem pursuant to a temporary permit from the Texas Commission on Environmental Quality ("TCEQ"), and AluChem received its permanent permit to produce the calcined alumina products in December, 2004. During every production run of calcined alumina products for AluChem, including the trial runs before the parties entered into the Supply Agreement, Sherwin Alumina experienced dust emissions from kiln 8 that had to be reported to TCEQ by a certain time.

After its first two-year term ending December 31, 2003, the Supply Agreement continued through another successive two-year term ending December 31, 2005. Since neither party had given notice of termination of the Supply Agreement, the Agreement then continued for another successive two-year term, to last from January 1, 2006 through December 31, 2007.[3]

In March, 2006, Sherwin Alumina underwent a change in

_____

[3]As noted above, the Court has declared that the Supply Agreement terminates on December 31, 2007. (D.E. 107).

ownership and management.  After the change in ownership, 49% of Sherwin Alumina was owned by Glencore, a foreign trading company, and 51% of the company was owned by China Minmetals, an entity owned by the People's Republic of China.

On April 26, 2006, Defendant Jerry Hooper of Sherwin Alumina sent Ed Butera of AluChem a letter stating that Sherwin Alumina was 'exercising its rights' under the force majeure clause contained in the Supply Agreement.[4]  In the letter, Sherwin Alumina contended that it was declaring force majeure due to environmental concerns, specifically dust emissions.  The letter stated that Sherwin Alumina intended to immediately cease production of calcined alumina products for AluChem.[5]

Sherwin Alumina later agreed to "withdraw" its force majeure provision and complete a May, 2006 run of calcined alumina products for AluChem, albeit at a price of $60 additional dollars per ton. AluChem paid Sherwin Alumina between $400,000 and $500,000 over the contract price as a result of the price increase for the May run.

The worldwide market for alumina, particularly calcined

---

[4]The Supply Agreement contains a force majeure clause, which states as follows in relevant part: "Seller shall not be liable for failure or delay in performance under this Order due in whole or in part to ... causes which are not within the reasonable control of Seller, whether or not of the kind specifically enumerated [in the Agreement]."  (RX-9, Supply Agreement, Attach. 1, ¶ 7).

[5]In its March 19, 2007 Order, the Court found that there was no genuine issue of material fact that Sherwin Alumina was not entitled to declare force majeure under the terms of the Supply Agreement.  (D.E. 107).

alumina, is currently very tight.  There are limited calcined alumina suppliers in the world, and Sherwin Alumina is one of two suppliers in the United States.  Without these calcined alumina products, AluChem may not be able to continue its business.

### III.  **Procedural Background**

A detailed recitation of the procedural background of this case is provided in the Court's March 19, 2007 Order granting AluChem's first motion for summary judgment.  (D.E. 107).  The Court refers the parties to its earlier Order for further information on the procedural background of the case.  The procedural history of the instant motion for summary judgment is provided below.

Sherwin Alumina filed the instant motion for summary judgment on February 20, 2007 (D.E. 86).  In its motion, Sherwin Alumina seeks (1) a declaration of the date of termination of the Supply Agreement; (2) summary judgment on AluChem's claims for fraud, violation of the Texas DTPA, and breach of the covenant of good faith; and (3) a declaration that Sherwin Alumina's liability is limited by the limitation of liability provision of the Supply Agreement.  As noted above, the Court already ruled in its March 19, 2007 Order that the Supply Agreement terminates as of December 31, 2007, so the issue of the date of contract termination is MOOT. With regard to the remaining issues, Sherwin Alumina argues that it did not make a false representation that would justify a fraud

claim, that AluChem does not have standing to sue under the DTPA, and that there is no implied covenant of good faith in the Supply Agreement.  Sherwin Alumina also argues that the Supply Agreement limits any liability of Sherwin Alumina to the purchase price of the products that form the basis for any claim.  Sherwin Alumina has offered evidence in support of its summary judgment motion, including affidavits of Sandra Bailey and Peter Bailey, as well as email correspondence between Sherwin Alumina and AluChem personnel.  See D.E. 86, attachments (Movant's Exhibits ("MX") 1-36).

On March 13, 2007, AluChem filed its response brief in opposition to Sherwin Alumina's motion for summary judgment (D.E. 103).  AluChem argues that it and not Sherwin Alumina is entitled to summary judgment on AluChem's fraud claim, that AluChem does have standing to sue under the DTPA, and that there is an implied covenant of good faith in the Supply Agreement that was breached by Sherwin Alumina.  AluChem also argues that the Supply Agreement's limitation of liability clause does not limit Sherwin Alumina's liability for intentional torts such as fraud.  AluChem has offered evidence in support of its response, including excerpts from the deposition testimony of Chester Ingersoll and Tom Ballou, an affidavit of Ed Butera, and an internal Sherwin Alumina memorandum entitled "Chemical Grade Aluminas Customer Review."  See D.E. 103, attachments (Respondent's Exhibits ("RX") 1-18).

IV.  **Discussion**

A.  **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-1047 (5th Cir. 1996).  If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.  See Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander,

<u>Inc.</u>, 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 270 (1968); <u>see also</u> <u>Schaefer v. Gulf Coast Reg'l Blood Ctr.</u>, 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue).

When the parties have submitted evidence of conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Willis</u>, 61 F.3d at 315.  Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. <u>See</u>, <u>e.g.</u>, <u>Rubinstein v. Adm'rs of the Tulane Educ. Fund</u>, 218 F.3d 392, 399 (5th Cir. 2000).

### B.   <u>AluChem's Claim for Breach of the Covenant of Good Faith</u>

AluChem brings a claim against Sherwin Alumina for breach of the covenant of good faith.  AluChem alleges that "[i]mplied in the Supply Agreement is a covenant of good faith, requiring Sherwin and AluChem to act with honesty in fact in the conduct of the transaction concerned."  (Amended Complaint, ¶ 57).  For the reasons set forth below, there is a factual issue as to whether

such a covenant is implied in the Supply Agreement, and Sherwin Alumina is not entitled to summary judgment on this claim.

### 1.   Covenant of Good Faith is Not Implied in All Contractual Relationships

"A common-law duty of good faith and fair dealing does not exist in all contractual relationships.  The duty arises only when a contract creates or governs a 'special relationship' between the parties." Barrand, Inc. v. Whataburger, Inc., 214 S.W.3d 122, 139 (Tex. App.--Corpus Christi 2006) (internal citations omitted); see also Arnold v. Nat'l County Mut. Fire Ins. Co., 725 S.W.2d 165, 167 (Tex. 1987) ("While this court has declined to impose an implied covenant of good faith and fair dealing in every contract, we have recognized that a duty of good faith and fair dealing may arise as a result of a special relationship between the parties governed or created by a contract"); Am. Indem. Co. v. Baumgart, 840 S.W.2d 634, 639 (Tex. App.--Corpus Christi 1992) ("While the Texas Supreme Court has refused to impose an implied covenant of good faith and fair dealing in every contract, the Court has recognized that a duty of good faith and fair dealing may arise as a result of a special relationship between the parties governed or created by a contract.").[6]

---

[6]Of note, AluChem argues in its response brief that all contracts governed by the UCC are subject to an implied covenant of good faith and fair dealing, pursuant to Tex. Bus. & Com. Code § 1.203 (Texas UCC).  (Response, p. 21).  AluChem cites to a 1991 Fifth Circuit case, Schmueser v. Burkburnett Bank, 937 F.2d 1025,

### 2. __Special Relationship Requirement__

"The type of 'special relationship' that gives rise to a duty of good faith and fair dealing is one 'marked by shared trust or an imbalance in bargaining power.'" Rushlake Hotels (USA), Inc. v. Hyatt, 1994 WL 709129, *4 (Tex. App.--Houston [1st Dist.] 1994) (citing Fed. Deposit Ins. Corp. v. Coleman, 795 S.W.2d 706, 708-709 (Tex. 1990)); see also City of San Antonio v. Forgy, 769 S.W.2d 293, 296 (Tex. App.--San Antonio 1989) ("The special relationships prerequisite to the implied covenant of duty arises ... either from the element of trust necessary to accomplish the goals of the undertaking, or ... because of an imbalance of bargaining power"); Guzman v. El Paso Natural Gas Co., 756 F.Supp. 994, 1001 (W.D. Tex. 1990) ("The Texas courts have injected the tort duty of good faith in discrete, special relationships, earmarked by specific characteristics including:  long standing relations, an imbalance of bargaining power, and significant trust and confidence shared by the parties."); Jhaver v. Zapata Off-Shore Co., 903 F.2d 381, 386 (5th Cir. 1990) ("Texas courts classify contractual relationships

---

1032 (5th Cir. 1991), for this proposition.  However, the Section 1.203 of the UCC that AluChem refers to regarding the implied covenant of good faith has been **deleted** from the Texas UCC.  See Tex. Bus. & Com. Code § 1.203, Historical and Statutory Notes ("Former § 1.203, relating to the obligation of good faith, was deleted" in 2003).  The new Section 1.203 is entitled "Lease Distinguished from Security Interest", and the revised statute addresses "[w]hether a transaction in the form of a lease creates a lease or security interest."  The new Section 1.203 does not address any implied covenant of good faith, and such an implied covenant is not included in the revised Texas UCC.

with imbalanced bargaining power as special. ... In addition, Texas courts classify contractual relationships special if the parties require trust and confidence to execute the contract.  Fiduciary or formal relationships require trust and confidence.  Formal relationships may arise from long standing dealings ... that justify the injured party's reliance.").

### 3.   Factual Dispute as to Whether AluChem and Sherwin Alumina had the Requisite "Special Relationship"

In this case, there is a factual dispute as to whether AluChem and Sherwin Alumina had the requisite "special relationship" to imply a covenant of good faith into the Supply Agreement.  As noted above, such a special relationship is marked by, among other things, "an imbalance in bargaining power."  <u>Forgy</u>, 769 S.W.2d at 296.  AluChem has submitted evidence regarding the very tight supply of the calcined alumina market, making Sherwin Alumina one of very few sources of products AluChem needs to keep its business afloat.  <u>See</u> RX-10, Butera Decl., ¶ 4 ("Sherwin is one of just two Calcined Alumina raw materials producers in the United States (only 3 exist in all of North America). ... receiving SC-2 and SC-10 from Sherwin Alumina is vitally important for AluChem's continued existence"); RX-12, email from Chester Ingersoll of Sherwin Alumina to various Sherwin Alumina personnel (stating that if Sherwin Alumina fails to supply AluChem with calcined alumina, "[Sherwin Alumina] will run AluChem out of feedstock. [Sherwin Alumina is]

sole-supplier to AluChem, and they are sole-supplier to several refractory manufacturers--the domino effect will be widespread and the economic repercussions significant"); RX-14, Mineral Price Watch; RX-15, Metal Bulletin Research Monthly.[7]  Given this situation, where AluChem desperately needs the products produced by Sherwin Alumina, there is a factual issue as to whether the parties have such an "imbalance of bargaining power" so as to imply a covenant of good faith into the Supply Agreement. <u>Guzman</u>, 756 F.Supp. 994, 1001.

Further, if the factual dispute described above is resolved in AluChem's favor at trial and there is found to be an implied covenant of good faith in the Supply Agreement, there remains a factual issue as to whether Sherwin Alumina breached that covenant. Sherwin Alumina does not address this issue in its motion for summary judgment, although AluChem raises it in its response. AluChem's argument is that Sherwin Alumina breached the covenant by declaring force majeure as an "exit strategy to avoid supplying AluChem products in a 'low' value contract." (Response, p. 23). AluChem has submitted evidence that in mid-April, 2006, Sherwin Alumina considered AluChem a "[n]on-valued customer" and that Sherwin Alumina sought to "determine [an] exit strategy" from the

---

[7]Sherwin Alumina's argument regarding this issue is that there is no special relationship between AluChem and Sherwin Alumina, because "[t]hese two parties are large corporations with many available resources.  The parties are essentially on an equal basis except that AluChem wants to purchase Sherwin Alumina's products."  (Motion, p. 21).

Supply Agreement.  (RX-7, Sherwin Alumina Chemical Grade Aluminas Customer Review).  Sherwin Alumina declared force majeure shortly thereafter, on April 26, 2006.  (RX-13, April 26, 2006 Force Majeure Letter).  The implication is that Sherwin Alumina declared force majeure only as a way to avoid its obligations under the Supply Agreement.  (Id.).  Based on the above, if an implied covenant of good faith does exist in the Supply Agreement, AluChem has submitted evidence to create a factual dispute as to whether that covenant was breached by Sherwin Alumina.

### C.  **AluChem's Claim Under the Texas DTPA**

In its Amended Complaint, AluChem brings a claim against Sherwin Alumina under the Texas DTPA.  For the reasons set forth below, Sherwin Alumina is entitled to summary judgment on AluChem's DTPA claim, because the transaction at issue is exempted by Section 17.49(g) of the DTPA (Tex. Bus. & Com. Code § 17.49(g)).[8]

### 1.  **Tex. Bus. & Com. Code § 17.49(g)**

Section 17.49(g) states that the DTPA does not apply to "a

---

[8]In its motion for summary judgment, Sherwin Alumina argues that both Tex. Bus. & Com. Code §§ 17.49(f) and 17.49(g) bar AluChem from bringing its claim under the DTPA.  (Motion, pp. 17-19).  Since AluChem's claim is barred by Section 17.49(g), the Court does not reach the issue of whether AluChem's DTPA claim is barred by Section 17.49(f).  Sherwin Alumina also argues that AluChem does not have standing to bring its DTPA claim, because AluChem does not qualify as a "consumer" under the terms of the statute.  (Motion, pp. 17-18).  Again, since AluChem's DTPA claim is unequivocally barred by Section 17.49(g), the Court does not reach the issue of whether AluChem is a consumer as defined by the DTPA.

cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving ***total consideration by the consumer of more than $500,000***, other than a cause of action involving a consumer's residence." Tex. Bus. & Com. Code § 17.49(g) (emphasis added).

### 2. "Total Consideration" of Over $500,000

Courts applying Section 17.49(g) have interpreted the "total consideration" requirement of the statute to encompass the face value of the parties' agreement, rather than solely the amount in dispute in the litigation. See, e.g., <u>Texas Motor Coach, L.C. v. Blue Bird Body Co.</u>, 2005 WL 3132482, *5 (E.D. Tex. 2005) (finding that plaintiff "has no avenue for relief pursuant to [Section 17.49(g)]", because the contract between the parties assumed delivery of three motor coaches, each with total consideration "in excess of $200,000"); <u>Landscape Design and Constr., Inc. v. Transport Leasing/Contract, Inc.</u>, 2002 WL 257573, *10 (N.D. Tex. 2002) (granting summary judgment and dismissing plaintiffs' DTPA claim pursuant to Section 17.49(g), where plaintiffs' argument was that Section 17.49(g) should not apply because the <u>disputed</u> amount was less than $300,000); <u>Space Maker Designs, Inc. v. Weldon F. Stump and Co., Inc.</u>, 2003 WL 21414726, *2 (N.D. Tex. 2003).  In <u>Space Maker Designs</u>, the defendant (Stump) filed a motion in limine to bar the plaintiff (Space Maker) from presenting evidence regarding its DTPA claim, on the grounds that Space Maker's DTPA

claim was precluded by Section 17.49(g).  See id. at *1.  Space Maker and Stump had entered into three contracts, with a total contract price to be charged of $519,000.  See id. at *2.  Space Maker argued that while the face value of the contracts exceeded $500,000, Space Maker's DTPA claim should not be precluded because the disputed amount was only $472,000.  See id.  The court rejected Space Maker's argument, finding that the "total consideration" consisted of the face value of the three contracts, therefore precluding Space Maker's DTPA claim under Section 17.49(g).  Id. In reaching its conclusion, the court reasoned as follows:

> The DTPA does not define the term "total consideration." Therefore, the Court must determine what the Legislature meant when it adopted this language.  When the language of statute is unambiguous, the Court should apply the ordinary meaning of the words being construed. ... Black's Law Dictionary defines consideration as "the inducement to a contract." ... Stump was clearly "induced" to enter into the contract by the promise of $519,000 in payment for the manufacturing equipment it was to deliver and install.  The fact that the actual value to be conveyed may have changed after the contract was entered into does not change the value of the consideration promised by the consumer at the time of contracting.  Furthermore, ***applying an ex ante approach rather than an ex post one allows parties to a contract to know with certainty whether their contract will fit within the coverage of the DTPA***.

Id. (emphasis added) (internal citations omitted).[9]

---

[9]The only Texas appellate court to analyze Section 17.49(g) did not directly address the meaning of the term "total consideration" in the statute.  See Citizens Nat'l Bank v. Allen Rae Investments, Inc., 142 S.W.3d 459, 473-74 (Tex. App.--Fort Worth 2004).  The Citizens Nat'l Bank court, however, did note that certain co-sponsors of Section 17.49(g) interpreted the section "to mean that 'the DTPA will no longer govern transactions in which the overall consideration exceeds

In this case, the annual total consideration of the Supply Agreement, even at the lowest end of production of RC-1, SC-2 and SC-10 far exceeds $500,000. (RX-9, Supply Agreement). As noted above, courts that have interpreted Section 17.49(g) have used this contractual face value price as the "total consideration" referred to in the statute. See, e.g., Space Maker Designs, Inc., 2003 WL 21414726 at *2. Taking the face value of the Supply Agreement as the "total consideration" in this case, AluChem's DTPA claim is clearly barred by Section 17.49(g) of the DTPA.

### 3.   Even Based Only on the May, 2006 Campaign Run, Section 17.49(g) Still Bars AluChem's DTPA Claim

The Court notes AluChem's argument that Section 17.49(g) is inapplicable "because the transaction on which AluChem's claim is based is for less than $500,000. Sherwin induced AluChem to pay $480,000 in extra fees." (Response, p. 20). The problem with AluChem's argument is that even only basing AluChem's DTPA claim on the May, 2006 campaign run where AluChem was charged an additional $60 per ton, the "total consideration" for only that transaction is still well over $500,000. AluChem's figure of $480,000 is the amount over the original contract price that AluChem says it paid Sherwin Alumina -- the total consideration for the transaction, including the contract price and the additional charge, was over

---

$500,000.'" Id. (citing Teel Bivins et al., The 1995 Revisions to the DTPA: Altering the Landscape, 27 TEX. TECH L. REV. 1441, 1447 (1996)).

$500,000.  It is only the disputed <u>additional amount</u> that is less than $500,000.[10]  By its terms, the DTPA does not apply to a "transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000".  Tex. Bus. & Com. Code § 17.49(g).  Even taking the May, 2006 campaign run as a stand-alone transaction, the "total consideration" for that run was over $500,000, because it includes the disputed $480,000 "surcharge" and the original contract price.

Accordingly, based on the above, under Section 17.49(g) of the DTPA, Sherwin Alumina is entitled to summary judgment on AluChem's DTPA claim.[11]

_____

[10]As noted above, courts addressing Section 17.49(g) have not used only the "disputed amount" to determine whether the "total consideration" exceeds $500,000.  <u>See</u>, e.g., <u>Landscape Design and Constr., Inc.</u>, 2002 WL 257573 at *10.  Accordingly, AluChem cannot claim that the $480,000 amount in dispute falls below the $500,000 threshold necessary for application of the Section 17.49(g) exception.

[11]Sherwin Alumina seeks attorneys' fees and costs incurred in defending against AluChem's DTPA claim.  (Motion, p. 19).  The Court hereby DENIES Sherwin Alumina's request for attorneys' fees under the DTPA.  DTPA Section 17.50(c) provides that "[o]n a finding by the court that an action under this section was groundless and brought in bad faith, or bought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs."  Tex. Bus. & Com. Code § 17.50(c).  The trial court is charged with determining whether the suit is groundless and brought in bad faith or to harass.  <u>See</u> <u>Donwerth v. Preston II Chrysler-Dodge</u>, 775 S.W.2d 634, 637 (Tex. 1989).  "Groundless" under the DTPA means that the claim has "no basis in law or fact and [is] not warranted by good faith argument for extension, modification or reversal of existing law."  <u>Id.</u> (internal citations omitted); <u>see</u> <u>also</u> <u>McClung v. Wal-Mart</u>, 866 F.Supp. 306, 310 (N.D. Tex. 1994).  "Bad faith" under the DTPA means that the plaintiff "must have acted with malice or discriminatory intent."  <u>McClung</u>, 866 F.Supp. at

D.   **AluChem's Fraud Claim**

In its Amended Complaint, AluChem brings a fraud claim against Sherwin Alumina, alleging that Sherwin Alumina defrauded AluChem "by improperly asserting a force majeure event" on April 26, 2006, and by "extracting by duress a $60.00/net ton price premium for the May 2006 campaign run based upon false representations".  (Amended Complaint, ¶ 66).  For the reasons set forth below, Sherwin Alumina is not entitled to summary judgment on AluChem's claim for fraud.

1.   **Elements of Fraud Claim**

The elements of a fraud claim are as follows:   (1) the defendant must make a false material misrepresentation; (2) the defendant must have known the representation was false, or the defendant must have made the misrepresentation "recklessly as a positive assertion without any knowledge of its truth"; (3) the defendant must have intended to induce the plaintiff to act upon the representation; and (4) the plaintiff must have actually and justifiably relied upon the representation and suffered injury.  Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001).  As set forth below, factual disputes exist as to

---

310.  In this case, the Court finds that AluChem's DTPA claim against Sherwin Alumina was not groundless and was not brought in bad faith.  Although AluChem's DTPA claim was dismissed on summary judgment, the claim was not without basis in law or fact, and there is nothing in the record indicating that AluChem brought the claim with any malice or discriminatory intent. Accordingly, Sherwin Alumina is not entitled to attorneys' fees or costs under DTPA Section 17.50(c).

whether Sherwin Alumina's conduct satisfies the elements required for a fraud cause of action.

### 2. Factual Disputes

#### a. Factual Dispute re: Falsity of Representation

The first factual dispute regarding AluChem's fraud claim concerns Sherwin Alumina's representations in its April 26, 2006 letter. The Court has already declared that Sherwin Alumina was not entitled to declare force majeure under the terms of the Supply Agreement (D.E. 107). AluChem now focuses on Sherwin Alumina's statement in its April 26, 2006 letter stating that Sherwin Alumina is "now being fined" for violations of TCEQ regulations. (RX-13, April 26, 2006 Letter). Based on the summary judgment evidence submitted by both parties, there is a factual dispute as to whether this statement is actually a "false representation."

AluChem has submitted summary judgment evidence in the form of deposition testimony from Chester Ingersoll, Sherwin Alumina's Operations Manager. At Mr. Ingersoll's deposition, AluChem's counsel asked the deponent "How many fines are you aware of relating to processes in kiln 8?" Mr. Ingersoll replied "None." (RX-4, Ingersoll Dep., 198:5-7). AluChem's counsel also asked Mr. Ingersoll, "Do you know of any fines [on kiln 8]?". Mr. Ingersoll responded "No, I don't know of any." (Id., 199:21-24). AluChem also submits an affidavit of Ed Butera, AluChem Vice President of Marketing & Sales, stating that after receipt of the force majeure

letter, Mr. Butera learned that "Sherwin had not been fined in connection with producing SC-2 or SC-10." (RX-10, Butera Decl., ¶ 8).

Sherwin Alumina has submitted summary judgment evidence in the form of an Agreed Order from the TCEQ, assessing a civil penalty on Sherwin Alumina for $20,488.00. (Attach. A to RX-11, TCEQ Agreed Order). In the "Findings of Fact" section of the Agreed Order, TCEQ notes the following: (1) that Sherwin Alumina failed to "adequately report" the cause of a July 7, 2004 emissions event for kiln 8; and (2) that Sherwin Alumina "failed to prevent unauthorized emissions from [kiln 8] which occurred on" May 29 and July 7, 2004. (Id., p. 2). TCEQ found that these May 29 and July 7, 2004 emissions were "avoidable". (Id.).[12]

Based on the above, there exists a genuine issue of material fact as to the falsity of Sherwin Alumina's statement in its April 26, 2006 letter that it was "now being fined" for violations of TCEQ regulations. This factual issue precludes summary judgment for Sherwin Alumina on AluChem's claim for fraud.[13]

---

[12]The Court notes that from the available evidence, it is not possible to determine whether these emissions were due to human error, or whether they were a result of some inherent quality of the calcined alumina manufacturing process. Rather, at the initial pretrial conference on June 23, 2006, Peter Bailey of Sherwin Alumina testified that the portions of any TCEQ fine that related to kiln 8 should be classified as "human error". (IPTC Tr., 79:22-25) ("[w]e have been fined on very few occasions, I think two occasions, and that is due to human error.").

[13]The Court notes that AluChem has filed a motion to strike two affidavits attached as evidence to Sherwin Alumina's motion

### b.   **Factual Issue re: Reliance**

Another factual issue exists as to whether AluChem actually and justifiably relied upon Sherwin Alumina's allegedly false representation.   Sherwin Alumina maintains that AluChem did not rely on Sherwin Alumina's force majeure declaration and the corresponding statement regarding TCEQ fines, because AluChem filed suit and stated that it rejected Sherwin Alumina's declaration of force majeure.   Sherwin Alumina has submitted summary judgment evidence in the form of an email from Ron Zapletal of AluChem to Peter Bailey of Sherwin Alumina, stating "[t]o the extent that I have not already done so, let me say that AluChem rejects Mr. Hooper's April 26 [force majeure] notice."   (MX-25, May 1, 2006 Email from R. Zapletal to P. Bailey).

AluChem maintains that it relied on Sherwin Alumina's false representation regarding fines by paying an additional $60 per ton for the May, 2006 campaign run.   AluChem has submitted summary

---

for summary judgment (D.E. 106).   Specifically, AluChem seeks to strike the affidavits of Tom Ballou and Chester Ingersoll, on the grounds that Paragraph No. 3 of each affidavit contradicts the earlier deposition testimony of the affiants.   The Court finds that AluChem's motion to strike is MOOT, because the paragraphs regarding fines in the Ballou and Ingersoll affidavits are <u>not</u> pertinent to the Court's ruling on Sherwin Alumina's motion for summary judgment.   The Court has before it the TCEQ Agreed Order regarding the civil penalty issue, which contains similar information to that provided in the disputed paragraphs of the Ballou and Ingersoll affidavits.   Regardless of what is in the above-referenced affidavits, there is still a factual dispute as to the issue of whether Sherwin Alumina's representation regarding fines was a false representation.

judgment evidence that at the time AluChem paid the additional per ton charge, AluChem was under the impression that "Sherwin would use the advanced extra-contractual sum to offset the cost of the fines it represented to AluChem that it was incurring." (RX-10, Butera Decl., ¶ 8). AluChem has also submitted an email communication whereby Sherwin Alumina essentially agreed to "withdraw [its] force majeure" if AluChem agreed to an "additional price incentive". (RX-2, May 2, 2006 Email from P. Bailey to R. Zapletal).

Based on the above, there exists a genuine issue of material fact on the element of reliance, which also precludes summary judgment for Sherwin Alumina on AluChem's fraud cause of action.[14]

### E.    Limitation of Liability Clause

The Supply Agreement contains a limitation of liability clause that reads as follows:

> SELLER'S LIABILITY FOR ANY LOSS OR DAMAGE ARISING OUT OF OR RESULTING FROM OR IN ANY WAY CONNECTED WITH THIS ORDER SHALL NOT EXCEED BUYER'S PURCHASE PRICE FOR THE PARTICULAR PRODUCT OR SERVICE UPON WHICH SUCH LIABILITY IS BASED, REGARDLESS OF WHETHER SUCH LIABILITY ARISES IN CONTRACT (INCLUDING, BUT NOT LIMITED TO, FAILURE OR DELAY IN PERFORMANCE OR DELIVERY DUE TO ANY CAUSE WHATSOEVER), TORT (INCLUDING, BUT NOT LIMITED TO NEGLIGENCE OR STRICT LIABILITY) OR OTHERWISE.  IN NO EVENT SHALL SELLER BE LIABLE TO BUYER, FOR LOSS OF PROFITS OR REVENUE OR FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES,

---

[14]As the Court has not granted Sherwin Alumina summary judgment on AluChem's fraud claim, the Court also DENIES Sherwin Alumina's request for Rule 11 sanctions in the form of attorneys' fees incurred in defending against the fraud claim.  See Fed. R. Civ. P. 11(b).

REGARDLESS OF PRIOR DEALINGS.

(RX-9, Supply Agreement, Attach. 1, ¶ 3).

Sherwin Alumina asks the Court for a declaration that Sherwin Alumina's liability is limited by the above-referenced clause "to the purchase price of the products the subject of any claim." (Motion, p. 23). For the reasons set forth below, the Court hereby DENIES Sherwin Alumina's request for such declaratory relief.

In this case, AluChem brings a fraud claim against Sherwin Alumina and three Sherwin Alumina employees. Fraud is an intentional tort. See Offshore Petroleum Divers, Inc. v. Cromp, 952 S.W.2d 954, 956 (Tex. App.--Beaumont 1997) (the "jury found [that plaintiff] committed fraud, an intentional tort.").

Accordingly, Sherwin Alumina may not limit its liability pursuant to the Supply Agreement's limitation on liability clause, because "Texas courts may not enforce a contractual limitation of liability as a defense to an intentional tort such as fraud." Helms v. Southwestern Bell Tel. Co., 794 F.2d 188, 193 (5th Cir. 1983); see also Budner v. Wellness Int'l Network, Ltd., 2007 WL 806642, *8 (N.D. Tex. 2007) ("Defendants cannot prospectively limit their liability for intentional torts such as those pleaded by Plaintiffs. Texas courts have held that a party cannot prospectively insulate itself contractually from liability for intentional torts."); Solis v. Evins, 951 S.W.2d 44, 50 (Tex. App.--Corpus Christi 1997) (finding that it would be "contrary to public

policy" for a party to "prospectively contractually exculpate itself with respect to intentional torts.").[15]

Accordingly, since AluChem brings an intentional tort claim against the Defendants in this case, Sherwin Alumina cannot limit its liability pursuant to the Supply Agreement's limitation of liability clause.  Sherwin Alumina's request for declaratory relief is accordingly DENIED.

**V.    Conclusion**

For the reasons set forth above, the Court hereby GRANTS in part and DENIES in part Sherwin Alumina's motion for summary judgment (D.E. 86).  The Court GRANTS Sherwin Alumina's motion for summary judgment as to AluChem's claim under the Texas DTPA, and that claim is DISMISSED from the case.  The Court DENIES Sherwin Alumina's motion for summary judgment as to AluChem's claims for fraud and for breach of the covenant of good faith.  The Court also DENIES Sherwin Alumina's request for declaratory relief regarding the limitation of liability clause in the Supply Agreement.

SIGNED and ENTERED this 11th day of April, 2007.

_____
Janis Graham Jack
United States District Judge

---

[15]The Court notes that all of the cases cited by Sherwin Alumina in support of its limitation of liability argument deal with _negligence_, none of the cases address any intentional tort such as fraud.  (Motion, p. 22).